IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JAMIE BUSCH f.k.a. JAMIE AGEN**, individually and on behalf of all others similarly situated, 1093 Parker St. Springfield, MA 01129-1003<br><br>Plaintiff(s)<br><br>v.<br><br>**FREEDOM MORTGAGE CORPORATION** ℅ Stanley Middleman, C.E.O. 907 Pleasant Valley Avenue Mt. Laurel, NJ 08054<br><br>Defendant(s) | CASE NO.<br><br>JUDGE<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**(Jury Demand Endorsed Hereon)** |

Plaintiff Jamie Busch f.k.a. Jamie Agen ("Plaintiff" or "Busch"), individually, and on behalf of all others similarly situated, and for her Class Action Complaint against Defendant Freedom Mortgage Corporation ("Freedom" or "Defendant")

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a natural person residing in Hampden County, Massachusetts.

2. Freedom is an incorporated business under the laws of the State of New Jersey which does business in Massachusetts as a licensed foreign corporation. Freedom's headquarters and principal place of business is located at 907 Pleasant Valley Avenue, Suite 3, Mt. Laurel, NJ 08054.

3. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), as the amount in controversy exceeds Five Million Dollars ($5,000,000.00) exclusive of interest and costs, there are more than One Hundred (100) putative

class members, and at least one member of the proposed class has different citizenship than Freedom.

4. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim occurred within this District as Freedom is headquartered and maintains a significant majority of their mortgage servicing operations within this District.

## FACTUAL ALLEGATIONS

5. Freedom is a mortgage "servicer" as defined by 12 C.F.R. § 1024.2(b) and 12 U.S.C. § 2605(i)(2). Freedom is the current servicer of Plaintiff's and Class members' notes and mortgages on real property that secure those notes (collectively referred to hereinafter as the "Loans").

6. The Loans are each a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

7. Plaintiff and Class members received correspondence from Freedom during the month of October 2018 stating that payments on the Loans should be remitted to Freedom at the following address:

> Freedom Mortgage
> P.O. Box 89486
> Cleveland, OH 44101-6486

(the "Payment Address").

8. The Payment Address was not the correct address to which Plaintiff and Class members were required to submit their payments which was:

> Freedom Mortgage
> P.O. Box 6656
> Chicago, IL 60680-6656

(the "Correct Address").

9. As a result of Plaintiff and Class members sending their payments, as instructed, by Freedom to the Payment Address, such payments were not properly and timely received by Freedom and Freedom subsequently caused harm to Plaintiff and Class members including but not limited to late fees imposed on the Loans, costs to cancel payments to the Payment Address, costs to remit new payments to the Correct Address, and credit damages for being reported as delinquent on the Loans.

## FACTUAL ALLEGATIONS

*Facts Relevant to Plaintiff*

10. Busch is the owner of real property located at and commonly known as 1093 Parker Street, Springfield, Massachusetts 01129.

11. To finance the purchase of the property, Busch borrowed money and executed a note and granted a contemporaneous mortgage lien on said property to secure the same (the "Busch's Loan").

12. Freedom is the servicer of Busch's Loan.

13. On October 11, 2018, Freedom sent a mortgage statement to Busch with a detachable payment coupon to be returned with Busch's monthly mortgage payment ("Busch's October Statement"). *A true and accurate copy of Busch's October Statement is attached as* ***Exhibit 1***.

14. Busch's October Statement indicated that Busch was required to remit payment in the amount of $646.40 to Freedom at the Payment Address on or before November 1, 2018. *See Exhibit 1*.

15. At the end of October 2018, Busch submitted her monthly payment to Freedom via money order through the United States Postal Service (USPS) to the address on Busch's October Statement.

16. Busch received a missed telephone call from Freedom on November 19, 2018, but Freedom did not leave a message for Busch.

17. On November 19, 2018, Freedom sent a mortgage statement for Busch's Loan indicating that a late fee in the amount of $11.15 was imposed on the account and that there was an "Overdue Payment" due in the amount of $646.40 (the "Busch's November Statement"). *A copy of Busch's November Statement is attached as **Exhibit 2**.*

18. On November 27, 2018, Busch received correspondence from Freedom stating that Freedom did not receive Busch's payment for the November 1, 2018 due date and were imposing a late fee of $11.15.

19. Busch telephoned Freedom on November 27, 2018, and first spoke to an individual who self-identified as Lydia, Employee Identification No. 13206 ("Lydia"). Lydia informed Busch that the Payment Address printed on Busch's October Statement was incorrect and that Busch was one of many other individuals in the same situation as Busch regarding their mortgage payments to Freedom for the November 1, 2018 due date. Lydia further informed Busch that Freedom had sent a company-wide memorandum about the mortgage payment address issue and that she had attended a meeting regarding the same.

20. As a solution to the problem, Lydia suggested that Busch remit an extra payment to the Correct Address, which was not feasible to Busch who has fixed income that would not support a second mortgage payment.

21. Busch asked to speak to a supervisor but was put on hold and the telephone call disconnected after nearly ten (10) minutes.

22. Later, on November 27, 2018, after another unsuccessful attempt to reach Freedom, Busch was finally connected via telephone to a supervisor at Freedom who self-identified as Melissa, Employee Identification No. 8584 ("Melissa").

23. Melissa informed Busch the addresses were in the process of a "re-organization" so that in the future, mail would be delivered to regional addresses, but that the address Busch sent her payment was still good, contradicting the statements from Lydia, and that to avoid this problem Busch should have paid through direct withdrawals or via Freedom's online portal.

24. Melissa further stated that the only way she would help Busch was if Bush obtained a copy of the front and back of the money order.

25. Busch paid $5.95 for a money order inquiry, but Busch's funds, regardless, would be on hold for at least sixty (60) days, meaning that Busch, on her limited income, would not be able to submit a payment to make up her "delinquency" for another two (2) months.

26. On or about December 14, 2018, Busch obtained information from TransUnion that her account with Freedom was being reported to TransUnion (and likely other credit reporting agencies) as being "Late 30 Days". *A copy of a screenshot evidencing TransUnion reporting Busch as delinquent on Busch's Loan is attached as **Exhibit 3**.*

27. At no point did Freedom waive the late fee caused by Busch's payment due November 1, 2018 being sent to the Payment Address.

28. Rather, as of and evidenced by the mortgage statement for Busch's Loan dated February 4, 2019 which is attached as ***Exhibit 4,*** Busch has remitted $29.50 for late payments in

2019, and has since had to pay such funds in addition to incurring costs to remit the "overdue" payment due November 1, 2018 a second time which would not have been necessary but for Freedom's wrongful actions.

## CLASS ACTION ALLEGATIONS

29. **Class Definition:** Plaintiff brings this action pursuant to Fed R. Civ. P. 23 on behalf of a class of similarly situated individuals and entities (the "Class"), defined as follows:

> All loan borrowers in the United States (1) who received correspondence from Freedom in October 2018 advising them to make payments to "Freedom Mortgage, P.O. Box 89486, Cleveland, OH 44101-6486" for payments due November 1, 2018, and (2) to whom Freedom failed to timely and properly apply such payments to their loan accounts causing such borrowers to incur damages including but not limited to late fees imposed on such loans, costs to cancel payments to the advised address, costs to remit new payments to the proper address, and/or credit damages for being reported as delinquent on their loans.

30. **New Jersey Subclass Definition:** Plaintiff also brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a subclass of similarly situated individuals (the "New Jersey Subclass"), defined as follows:

> All loan borrowers in New Jersey (1) who received correspondence from Freedom in October 2018 advising them to make payments to "Freedom Mortgage, P.O. Box 89486, Cleveland, OH 44101-6486" for payments due November 1, 2018, and (2) to whom Freedom failed to timely and properly apply such payments to their loan accounts causing such borrowers to incur damages including but not limited to late fees imposed on such loans, costs to cancel payments to the advised address, costs to remit new payments to the proper address, and/or credit damages for being reported as delinquent on their loans.

31. Excluded from the Class and New Jersey Subclass are (1) Defendant Freedom Mortgage Corporation; (2) Defendant's agents; (3) any person(s) who executes and files a timely

request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

32.     **Numerosity**: Upon information and belief, the Class is comprised of more than 40 members. This conclusion is reasonable because Freedom is one of the largest mortgage providers and servicers in the country having recently celebrated their one millionth borrower in 2018[1] and Freedom notified Plaintiff and Class members for at least (1) month to send their payments to an incorrect address. The Class is so numerous that joinder of all members is impractical. The exact number of members in the Class is presently unknown, can only be ascertained through discovery, and can easily be identified through Freedom's records or by other means.

33.     **Commonality and Predominance:** All members of the Class have been subject to and affected by a uniform course of conduct, specifically, Freedom notifying Plaintiffs and Class members for at least one (1) month to remit all payments to an incorrect address. There are questions of law and fact common to the proposed Class that predominate over any individual questions.

34.     **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and Class members were advised by Freedom to remit payments to an incorrect address which caused Plaintiff and Class members to incur damages as a result.

---

[1] *Freedom Mortgage Reaches 1 Million-Borrower Milestone,* http://blog.freedommortgage.com/press-releases/freedom-mortgage-reaches-1-million-borrower-milestone, (last visited March 25, 2019).

35. **Adequacy:** Plaintiff will adequately represent the interests of the Class and does not have adverse interests to the Class. If individual Class members prosecuted separate actions, it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct. A class action is the superior method for the quick and efficient adjudication of this controversy. Plaintiff's counsel have extensive experience litigating consumer class actions.

## COUNT ONE:
## VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
(on behalf of Plaintiff and the Class)

36. Plaintiff repeats and realleges Paragraphs 1 through 35 with the same force and effect as though fully set forth herein.

37. Freedom is in privity of contract with Plaintiff and each of the Class members, through each of the Loans, and as such is obligated by contract and common law to act in good faith and to deal fairly with Plaintiff and Class Members.

38. The purpose of the covenant of good faith and fair dealing is to guarantee that the parties remain committed to the intended and agreed upon expectations of the parties in their performance.

39. Freedom has breached this duty of good faith and fair dealing through its conduct relating to advising Plaintiff and Class members to remit payments to the Payment Address rather than the Correct Address

40. Freedom has acted in bad faith, dishonestly, and with an improper motive to injure the rights of Duncan.

41. Freedom's actions, outlined *supra*, caused harm to Plaintiff and New Jersey Subclass members including but not limited to late fees imposed on the Loans, costs to cancel payments to the Payment Address, costs to remit new payments to the Correct Address, and credit damages for being reported as delinquent on the Loans.

42. Freedom is therefore liable to Plaintiffs, Class and Subclass members for actual damages described in Paragraph 41 above in an amount to be determined at trial;

## COUNT TWO:
## VIOLATION OF N.J.S.A § 56:8-2, THE CONSUMER FRAUD ACT (CFA)
(on behalf of Plaintiff and the New Jersey Subclass)

43. Plaintiff repeats and realleges repeats and realleges Paragraphs 1 through 35 with the same force and effect as though fully set forth herein.

44. Plaintiff and each of the New Jersey Subclass members is a "person" as defined by N.J.S.A. § 56:8-1(d), they are each a natural person.

45. Freedom is a "person" as defined by N.J.S.A. § 56:8-1(d) because Freedom is a partnership, corporation, company, trust, business entity, or business association.

46. The CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate...

N.J.S.A. § 56:8-2.

47. In the operation of its business, Freedom engaged in the use of unlawful practices through its conduct relating to advising Plaintiff and New Jersey Subclass members to remit payments to the Payment Address rather than the Correct Address.

48. The CFA applies to mortgage servicing generally and to unconscionable business practices regarding the acceptance and application of payments.

49. Freedom misrepresented to Plaintiff and New Jersey Subclass members as to where they were required to remit their payments on the Loans due November 1, 2018, and Plaintiff and New Jersey Subclass members relied upon such misrepresentations.

50. As a result of this deception, misrepresentation and unconscionable business practice, Freedom failed to properly and timely apply the payments of Plaintiff and New Jersey Subclass members to their respective Loans.

51. But for Freedom's errors, the payments of Plaintiff and New Jersey Subclass members to their respective Loans due November 1, 2018, would have been timely and properly applied.

52. Each unconscionable practice, false promise, misrepresentation, and/or knowing omission of material fact by Freedom described, *supra*, constitutes a separate violation under the CFA.

53. Freedom's actions, outlined *supra*, caused harm to Plaintiff and New Jersey Subclass members including but not limited to late fees imposed on the Loans, costs to cancel payments to the Payment Address, costs to remit new payments to the Correct Address, and credit damages for being reported as delinquent on the Loans.

54. Freedom is liable to the Plaintiff and New Jersey Subclass members for actual damages in an amount to be determined at trial, punitive damages in an amount to be determined at trial, and Plaintiff and New Jersey Subclass member(s)' Attorneys' Fees and Costs.

**WHEREFORE,** Plaintiff Jaime Busch, individually, and on behalf of the Class and the New Jersey Subclass, prays for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class and the New Jersey Subclass defined herein;

B. Designating Plaintiff as representative of the Class and the New Jersey Subclass and their undersigned counsel as Class Counsel;

C. Entering judgment in favor of Plaintiff, the Class, and the New Jersey Subclass, and against Defendant;

D. Awarding Plaintiff, the Class, and the New Jersey Subclass their actual damages and punitive damages, as applicable for all of the violations contained in Counts One and Two of the Complaint;

E. Awarding Plaintiff, the Class, and the New Jersey Subclass attorneys' fees and costs, including interest thereon, as allowed or required by law, as applicable for all of the violations contained in Counts One and Two of the Complaint; and

F. Granting all such further and other relief as this Court deems just and appropriate.

Respectfully Submitted,

/s/ Javier L. Merino
Javier L. Merino
DannLaw
1 Meadowlands Plaza, Suite 200
East Rutherford, NJ 07073
(201) 355-3440
(216) 373-0536 e-fax
notices@dannlaw.com

Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*
Matthew C. De Re
*matt@attorneyzim.com*

        Zimmerman Law Offices, P.C.
        77 W. Washington Street, Suite 1220
        Chicago, Illinois 60602
        (312) 440-0020 telephone
        (312) 440-4180 facsimile
        *Pro Hac Vice Anticipated*

        Michael A. Smith, Jr.
        Dannlaw
        P.O. Box 6031040
        Cleveland, OH  44103
        (216)373-0539 telephone
        (216)373-0536 facsimile
        *notices@dannlaw.com*

        Marc E. Dann
        Dannlaw
        P.O. Box 6031040
        Cleveland, OH  44103
        (216)373-0539 telephone
        (216)373-0536 facsimile
        *notices@dannlaw.com*
        *Pro Hac Vice Anticipated*

        *Attorneys for the Plaintiff, Class and New Jersey Subclass*

## JURY DEMAND

Bouayad hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

        /s/ Javier L. Merino
        Javier, L. Merino
        Dann Law
        *Counsel for Plaintiff Jamie Busch and Class*